50 CCPA

**Application of Charles BLOCK and John R. Gardner.**

**Patent Appeal No. 6900.**

United States Court of Customs and Patent Appeals.

June 6, 1963.

Dale A. Bauer, Bauer & Seymour, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

This is an appeal from the decision of the Board of Appeals which affirmed the examiner's rejection of claims 40 and 41 of appellants' application [1] for a patent for a "Photoprinting Apparatus". The appeal as to claim 41 was withdrawn by appellants. Therefore, the sole issue is whether claim 40 was properly rejected as "unpatentable" over a single reference patent. The reference relied upon by the examiner and board is:

Knobel   2,158,903   May 16, 1939

Appealed claim 40 is as follows:

"A photoprinting apparatus comprising means for holding an original and a duplicate member in reproducing relationship, said means including a selectively movable pressure platen for engaging the duplicate member, a source of printing light, a shutter selectively movable into shutter-closed position between the source of printing light and the original and duplicate members, means for moving the shutter, a timer, means responsive to the placing of the platen in closed, duplicate-engaging position to start the timer and to open the shutter, and means operated by the timer for closing the shutter upon the stopping of the timer."

The appealed claim defines an automatic apparatus for contact photoprinting from a film negative. The claim defines only certain features of the complete photoprinting apparatus disclosed in appellants' application. The part of appellants' complete apparatus pertinent to this appeal is the aperture covered by a hinged platen or lever which is held open by a spring. After a light sensitive material and a negative are placed in contact over the aperture, the hinged platen

is manually closed. When the platen reaches the closed position, it is locked there by a latch mechanism which also actuates a microswitch which in turn actuates a pre-set timer. This timer is manually pre-set to control the length of exposure. After the timer is pre-set and energized by closing the platen, a timer switch immediately closes a circuit which actuates a shutter operating solenoid which in turn opens a shutter to make the exposure. As soon as the pre-set timer has completed the cycle for which it was set, it opens the shutter solenoid circuit which causes the shutter to close. At the same time, a latch actuating solenoid is energized which causes the latch mechanism to release the hinged platen. The platen is opened by the spring, and, as the platen opens, the latch mechanism opens the microswitch to the timer. After the exposed duplicate and negative are removed, the apparatus is ready for another timed exposure.

The sole reference relied upon by the board is a patent to Knobel for a "Photo-Printing Apparatus". Knobel discloses a system for controlling the exposure time for contact printing in which a light sensitive paper and negative are placed in contact over an aperture covered by a hood mounted within a hinged platen. Within this hood is a photoelectric cell which receives the light passing through the paper and negative from a light source. The amount of light reaching the photoelectric cell will vary with the density of the negative and the opacity of the paper. When the hood and platen are in open position, the light source and shutter circuits are de-energized, i. e., the light is off and the shutter is closed. A selected condenser and potentiometer combination, which may be manually pre-selected by a switch from a number of condensers and potentiometers, are connected in series in a circuit which is connected in series to the grid of a thyratron tube.[2] With the platen in the open

1. Serial No. 676,261, filed August 5, 1957.

2. The principles of thyratron tubes are concisely set forth in Terman, Radio Engineering, 3rd Ed., 1947, McGraw-Hill, New York, N.Y., p. 220.

position, the condenser is charged with a relatively high voltage so as to place a negative bias upon the grid of the thyratron so it will not conduct current from the cathode to the plate.

When the printing paper and negative are placed over the aperture and the platen is manually closed, the following sequence automatically takes place: The light source and shutter circuits are energized by the closing of the platen, i. e., the light source lights and the shutter opens. Another switch is opened which opens the circuit charging the potentiometer and condenser combination. The light passing through the paper and negative to the photoelectric cell causes current, proportional to the light intensity, to flow in the circuit containing the selected condenser. This current, of opposite charge to the charge on the condenser, acts to reduce the charge on this condenser from its high negative value. As this negative charge decays, it reduces the negative bias on the grid of the thyratron tube. At a certain value, depending upon the tube characteristic, the tube becomes conductive. Current flows through the thyratron tube and energizes two solenoids which act, through appropriate circuitry, to close the shutter, turn out the light source and release the platen. Thus, the apparatus is ready to repeat the cycle after the exposed paper and negative are removed. The specific circuitry utilized in the Knobel apparatus is unimportant for purposes of this appeal.

The board, in sustaining the examiner's rejection of the appealed claim under 35 U.S.C. § 103 as "unpatentable over Knobel", concluded that:

" * * * The claim merely requires that an original and duplicate member be held in reproducing relationship by means which includes a selectively movable pressure platen for engaging the duplicate member all of which is clearly disclosed in Knobel. The claim further states that a shutter is selectively movable between the light source and the original and duplicate members. Such

shutter and film positioning does not define over the contact printing arrangement disclosed in Figures 9 to 11 in Knobel. The claim calls for means for moving the shutter which could be either the solenoid 72 or the spring 70 of Knobel. *The Knobel device is provided with a timer which is generally defined on page 1, second paragraph of the patent.* The bar 121 of Knobel is means responsive *to placing the platen in closed, duplicate-engaging position to start the timer and to open the shutter. This is done by the switch means connected with the bar. The solenoid actuated switches 119, 113 of Knobel are means operated by the timer for closing the shutter 66. This means is operated only when the timing cycle is complete.* It is our opinion [,] that the claim finds its full response in the Knobel patent and we will therefore sustain the rejection of the claim on Knobel. [Emphasis added.]

Appellants urge that the Knobel reference does not disclose a "timer" as required by the apparatus defined in the appealed claim, and that therefore, the reference fails to show the last three elements in the claim. This argument is summarized in appellants' brief as follows:

"We do, however, respectfully and earnestly contend that the Knobel patent *does not* disclose:

"(1) A timer; or

"(2) Means responsive to the closing of the platen to start the timer (there being no timer); or

"(3) Means operated by the timer (there being no timer) for closing the shutter upon stopping of the timer (there being no timer)."

Thus, the sole question to be decided is whether the board was correct in its conclusion that "the Knobel device is provided with a timer * * *."

Appellants point out that the print exposure time in the Knobel apparatus is automatically varied in accordance

with the over-all density or opacity of the film negative and printing paper, whereas in appellants' device, the exposure time is set for an exact number of seconds by a timer. Appellants further argue that a device such as that disclosed by Knobel would be unsatisfactory for microfilm work which requires higher resolution than ordinary photography. While this may be true, we are not convinced that the appealed claim defines an apparatus which is patentable over the apparatus disclosed by Knobel.

As explained above, current passing through the photoelectric cell in the Knobel apparatus causes the charge in a selected condenser to decay, which in turn renders the thyratron conductive and causes the shutter to close, the lamp to go out and the platen to open. It is clear from the specification of the patentee that, by selection of various combinations of condensers and potentiometers, the operator may adjust the printing time range for different types of light sensitive paper. Knobel explains this operation in his specification as follows:

"The apparatus as illustrated employs three condensers 86, 87 and 88 of different capacities for respective varying the time of printing exposure, and cooperating with these condensers are the three potentiometers 90, 91 and 92 each of which is individually adjustable, the potentiometers being adapted to bias the charging voltages to the condensers for the purpose of varying the time of printing exposure in accordance with the grade of printing paper used, all as hereinafter more specifically described. * * *

\* \* \* \* \* *

"The operation of the apparatus is substantially as follows: The operator first adjusts the taps 98 respectively to positions on the potentiometers suitable to compensate for the grade of printing paper which is to be used, these taps usually being adjusted only when a new or different batch of paper is to be employed, it being understood that the grade or speed of the same paper may vary in different batches. The operator then sets the double-pole switch 131 to cut into the circuit 93 the condenser 86–88 which is most suitable for the grade or speed of paper being used and simultaneously therewith to place the corresponding potentiometer in the circuit."

Thus, while the photoelectric cell in Knobel may vary the exposure time in accordance with negative density, the selected condenser-potentiometer combination will control the range over which the time of exposure may be varied by the photoelectric cell.

It is our opinion that the condenser-potentiometer combination disclosed in the Knobel reference functions as a "timer" because it regulates the times or time range within which the photoelectric cell may operate to discharge the condenser and thence the thyratron. We think that the term "timer" [3] includes not only a conventional mechanical timer as disclosed by appellant but also the condenser-potentiometer combination used by Knobel to regulate the range of exposure times to accommodate various grades or speeds of printing paper. As pointed out in the solicitor's brief, the "time constant" of a series circuit can be calculated [4] from the resistance and capacitance in the circuit, and this principal has been used by Knobel to control exposure times in photoprinting. Appellants have not presented any reasons to convince us that the word "timer", as used in the appealed claim, must be interpreted to

3. "TIMER

"1 : one that measures, records, or regulates time: as * * * f * * * (2) : a device for automatically starting or stopping a machine or other device at a given time or for automatically controlling the operating interval."

The Webster Third New International Dictionary, 1961.

4. See The Radio Amateur's Handbook, 1952, pp. 29–30, The Rumford Press, Concord, New Hampshire, and the Radio Engineering Handbook, 5th Ed., 1959, Ch. 5–6, McGraw-Hill, New York, N.Y.

exclude the electronic "timer" in the Knobel apparatus. We therefore agree with the Board of Appeals in affirming the rejection of claim 40.

Affirmed.